UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JULIE RODRIGUEZ, individually and on behalf of her minor child, J.R.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**DIOCESE OF CAMDEN, SAINT JOSEPH REGIONAL SCHOOL, WILLIAM WATSON, JANICE DECICCO FIPP, JOHN AND JANES DOES 1-5, and ABC CORPS. 1-5,**<br><br>**Defendants.** | Case No.: _____<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Julie Rodriguez, individually and on behalf of her minor child, Plaintiff J.R. ("Plaintiffs"), hereby states in this Complaint against Diocese of Camden (the "Diocese"), Saint Joseph Regional School ("St. Joseph" or the "School"), William Watson ("Watson") and Janice DeCicco Fipp ("Fipp") (collectively "Defendants"), the following:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1331 and §1343.

2. Plaintiffs also invoke this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), over any and all state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

3. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in New Jersey.

## THE PARTIES

4. Plaintiff Julie Rodriguez ("Rodriguez") is an individual residing in, and a citizen of, the State of New Jersey. She is the mother of J.R.

5. Plaintiff J.R. ("J.R.") is a Hispanic and African American male under the age of eighteen residing in, and a citizen of, the State of New Jersey. At all relevant times, J.R. lived with his mother.

6. Defendant Diocese is a non-profit religious organization incorporated under the laws of the State of New Jersey. The Diocese oversees local parishes and schools in and around Atlantic, Camden, Cape May, Cumberland, Gloucester and Salem Counties.

7. At all relevant times, the Diocese maintained control and authority over St. Joseph's administrative operations and policies.

8. Defendant St. Joseph is a private, Catholic grade school offering pre-kindergarten through eighth grade classes in Somers Point, New Jersey.

9. Upon information and belief, Defendant St. Joseph is a non-profit religious organization incorporated under the laws of the State of New Jersey.

10. St. Joseph received federal funds through the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 6301, et. seq.

11. Defendant Watson is a Caucasian male who, upon information and belief, resides in, and is a citizen of, the State of New Jersey.

12. At all relevant times, Defendant Watson was the Superintendent of schools for the Diocese and was responsible for, among other duties, overseeing St. Joseph's personnel, curriculum, and for developing, implementing and enforcing St. Joseph's policies and rules.

13. Defendant Fipp is a Caucasian female who, upon information and belief, resides in, and is a citizen of, the State of New Jersey.

14. At all relevant times, Defendant Fipp was the Principal of St. Joseph and was responsible for the daily operations of the School, including, but not limited to overseeing all St. Joseph personnel, curriculum, student admissions, student behavior, student discipline, and for developing, implementing and enforcing St. Joseph's policies and rules.

## FACTUAL ALLEGATIONS

15. St. Joseph's 2021-2022 School Year Plan (the "Plan") defines the School's mission statement: "Saint Joseph Regional School, founded in 1958, strives to foster the development of the whole child within a gospel centered environment. We encourage students to question, seek understanding, and practice acceptance. We recognize the dignity of the human person and help students to develop mature relationships with God, themselves, and the world around them."

16. Rodriguez paid tuition every year for J.R. to attend Defendant St. Joseph.

17. J.R. began attending St. Joseph in September of 2013 as a Kindergartener.

18. At all times relevant, J.R. and his classmates were under Defendants' exclusive custody and control during School hours and activities. Defendants were required to supervise all of the students on School grounds at all times.

19. At all times relevant, upon information and belief Defendant Watson was employed by Defendant Diocese and Defendant Fipp was employed by Defendant St. Joseph.

20. At all times relevant, Defendant Watson and Defendant Fipp were responsible for overseeing all St. Joseph personnel.

21. The racial discrimination and conduct of J.R. began in Second Grade. During J.R.'s First Holy Communion, a teacher, Sr. Judith Ann Loschiavo, SSJ, pulled J.R. out of the pew where

3

he sat with his mother, Plaintiff Rodriguez, a Hispanic woman, and placed him next to an African American family, as she believed he was seated with the wrong family.

22. In Third Grade, J.R. was called a "wigger" by his classmates due to his hair type. The incident was reported to the principal at the time.

23. In Seventh Grade, during the 2021-2022 school year, J.R. was advised that a classmate, M.C, a Caucasian or non-African American female, was saying "shut up nigger" to other students, multiple times. J.R was the only Hispanic-African American Seventh Grader.

24. Plaintiff Rodriquez reported the incident to Defendant Fipp. However, no action was taken against M.C.

25. In or around December 2021, another Caucasian or non-African American student, A.M, stated "kill all blacks" in front of J.R.'s friend, K.F.

26. In or around April 2022, K.F. advised J.R. of what A.M. said and J.R. inquired with A.M who confirmed that he did in fact say "kill all blacks."

27. J.R. was distraught over A.M.'s statement and went to Defendant Fipp to voice his concern.

28. Defendant Fipp questioned whether A.M. actually made such a statement and advised that she will take care of the situation. However, no action was taken against A.M.

29. Around the same time, J.R. was sent a text thread between three classmates, J.C., D.N., and A.M., the same child who made the "kill all blacks" comment. In the text message thread, A.M. states, "i hate black people."

30. As weeks went by, J.R. noticed that no action was taken against A.M.

31. On May 24, 2022, Defendant Fipp contacted Plaintiff Rodriguez with regard to a statement that J.R. purportedly made to A.M. and requested a meeting. The statement that

Defendant Fipp claimed J.R. made was that he was going to "spin his block with his splatter ball gun."

32. During the meeting, Defendant Fipp advised Plaintiff Rodriguez that J.R. must be evaluated by a mental health care provider in order to return to school.

33. Plaintiff Rodriguez asked J.R. why he made such a comment, J.R. advised that he never made such a comment.

34. Defendant Fipp never contacted Plaintiff Rodriguez to advise her of the comments made by A.M.

35. Plaintiff Rodriguez asked Defendant Fipp whether A.M. was required to undergo an evaluation by a mental health provider due to his comments. Defendant Fipp stated no, however if it made Plaintiff Rodriguez feel better, Defendant Fipp would request for A.M. to also undergo an evaluation. Upon information and belief, A.M. never received an evaluation and continued with classes.

36. Due to Defendants' inaction, on May 25, 2022, Plaintiff Rodriguez withdrew J.R. from St. Joseph and transferred him to a local public school.

*Plaintiffs' Damages*

37. Plaintiff J.R. seeks damages for all losses caused by the Defendants, individually and collectively, in violation of his rights under Title VI and Section 1981. J.R. also seeks damages under state law for Defendants' negligence and violation of the Consumer Fraud Act.

38. Plaintiff J.R. is entitled to all relief necessary against Defendants, individually and collectively, to make him whole, including (1) compensatory damages for the pain, suffering and emotional distress caused by the Defendants, (2) damages under state law caused by Defendants' negligence, third-party beneficiary breach of contract, third-party beneficiary breach of the implied

covenant of good faith and fair dealing, (3) damages under the Consumer Fraud Act, (4) punitive damages and (5) special damages, including litigation costs and reasonable attorney's fees pursuant to Title VI, Section 1981 and the Consumer Fraud Act.

39. Plaintiff Rodriguez seeks damages for all losses caused by Defendants, individually and collectively, resulting from Defendants' negligence, breach of contract, breach of implied covenant of good faith and fair dealing, and violation of the Consumer Fraud Act.

40. Plaintiff Rodriguez is entitled to all relief necessary against Defendants, individually and collectively, to make them whole, including (1) compensatory damages including the cost of medical care and other expenses incurred caring for J.R., (2) punitive damages, and (3) special damages, including litigation costs and reasonable attorney's fees pursuant to the Consumer Fraud Act.

**FIRST CLAIM FOR RELIEF**
**(Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq., Against Defendants Diocese and St. Joseph)**

41. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation made previously herein.

42. At all relevant times, Defendants Diocese and St. Joseph received federal funding through a school lunch assistance program.

43. J.R. has a right to be free from race-based discrimination and harassment under Title VI of the Civil Rights Act of 1964.

44. J.R. was subjected to a severe, pervasive and objectively offensive raced-based hostile educational environment due to his classmate's continuous racial slurs and comments about his hair; his teacher removing him from the pew where he was sitting with his Hispanic mother and placing him next to a African-American family; and his principal's failure to act and discipline

6

J.R's harassers and sending J.R. for an evaluation by a mental health provider instead of J.R.'s harassers.

45.     Defendants Diocese and St. Joseph were aware of and deliberately indifferent to the racially hostile environment to which J.R. was subjected.

46.     Defendants Diocese and St. Joseph's actions and inaction, which failed to stop the racial discrimination and discriminating conduct toward J.R., included, but was not limited to:

   a. Failing to discipline known harassers and failing to take any meaningful remedial measures in response to the racial discrimination and discriminating conduct; and

   b. Failing to introduce any remedial or preventive methods, counseling services or educational services regarding racial discrimination and discriminating conduct to address the underlying discrimination directed at J.R.

47.     As a result, J.R. was deprived of access to the educational benefits and opportunities St. Joseph provided and to which J.R. was entitled, including, but not limited to, the non-discriminatory environment free of harassment required by law.

48.     As a direct and proximate result of Defendants Diocese and St. Joseph's actions and inaction, including their deliberate indifference, J.R. suffered damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**(Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 1981, Against All Defendants)**

49.     Plaintiffs repeat, reallege, and incorporate by reference each and every allegation made previously herein.

50.     Plaintiff Rodriguez, J.R., and Defendants Diocese and St. Joseph entered into a contract for J.R., as a third-party beneficiary, to receive and for Defendants to provide a private Catholic education in a safe and orderly learning environment free from harassment, intimidation,

racial discrimination, and discriminating conduct.

51. Plaintiff Rodriguez paid St. Joseph the required tuition money and performed all duties and obligations they owed to Defendants.

52. Defendants subjected J.R. to differential terms and conditions of his education because of his race and were deliberately indifferent to the harassment and racial discrimination that J.R. endured at St. Joseph.

53. Because of Defendants' deliberate indifference and intentional racial discrimination, J.R. was denied his right to equal educational opportunity under the contract with Defendants Diocese and St. Joseph in violation of Section 1981.

54. As a direct and proximate result of Defendants' actions and inaction, Plaintiffs suffered damages in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**(Negligence Claim Against Defendants Diocese and St. Joseph)**

55. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation made previously herein.

56. Defendants Diocese and St. Joseph owed a duty of care to J.R. to provide a safe and constructive learning environment free from harassment, intimidation, racial discrimination, and discriminating conduct.

57. Defendants Diocese and St. Joseph breached their duty of care by failing to protect J.R. from foreseeable and known harm, by failing to respond properly to the information and facts they observed and about which they were aware concerning the racial discrimination and harassment of J.R. on School property and during School hours, by failing to adequately supervise the individual Defendants, including Defendants Watson and Fipp, on School property and during School hours, and by failing to assure that the individual Defendants were fulfilling their duties

and obligations.

58. Defendants Diocese and St. Joseph breached their duty of care by failing to ensure that St. Joseph's personnel, including Watson and Fipp, were adequately trained to address racial discrimination and discriminating conduct among the School's students.

59. Defendants Diocese and St. Joseph breached their duty of care by failing to implement remedial or preventive measures after they knew repeated harassment and racial discrimination of J.R. occurred and was continuing to occur.

60. Defendants Diocese and St. Joseph breached their duty of care by failing adequately to discipline harassers of J.R. and prevent ongoing racial discrimination of J.R.

61. Defendants Diocese and St. Joseph breached their duty of care by protecting the School's reputation instead of providing J.R. with a safe and orderly educational environment.

62. As a direct and proximate result of Defendants Diocese and St. Joseph's breaches of their duty of care, Plaintiff Rodriguez and J.R. suffered damages in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**(Negligence Against All Individual Defendants)**

63. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation made previously herein.

64. The Individual Defendants owed a duty of care to provide J.R. with a safe and orderly learning environment free from harassment, intimidation, racial discrimination, and discriminating conduct.

65. The Individual Defendants breached their duty of care by failing to protect J.R. from foreseeable and known harm and by failing to respond properly to the information and facts they learned concerning the racial discrimination and harassment of J.R. on School property and

during School hours.

66. The Individual Defendants breached their duty of care by failing to implement remedial or preventive measures after repeated harassment and racial discrimination of J.R. was known to have occurred.

67. The Individual Defendants breached their duty of care by failing adequately to discipline harassers of J.R. and prevent ongoing harassment and racial discrimination of J.R.

68. The Individual Defendants breached their duty of care by attempting to protect St. Joseph's reputation instead of providing J.R. with a safe and orderly educational environment.

69. The Individual Defendants with supervisory responsibilities, including Defendant Watson and Defendant Fipp, breached their duty of care by failing adequately to train or supervise St. Joseph personnel on School property and during School hours.

70. Defendant Fipp breached her duty of care by engaging in racially discriminatory conduct herself.

71. As a direct and proximate cause, Defendants' breaches of their duty of care caused Plaintiffs to suffer damages in an amount to be determined at trial.

72. All Defendants are jointly and severally liable for Plaintiffs' damages.

### FIFTH CLAIM FOR RELIEF
**(Breach of Contract Against Defendants Diocese and St. Joseph)**

73. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation made previously herein.

74. Plaintiff Rodriguez, J.R. and Defendants Diocese and St. Joseph entered into a contract for J.R. to receive and Defendants to provide a private Catholic education in a safe and orderly learning environment free from harassment, intimidation, racial discrimination, and discriminating conduct.

75. Plaintiff Rodriguez paid St. Joseph the required tuition money and performed all duties and obligations they owed to Defendants Diocese and St. Joseph, including having J.R. and his parents agree to follow St. Joseph's Plan, policies, and procedures.

76. Defendants Diocese and St. Joseph materially breached their contractual obligations to Plaintiffs by failing to provide J.R. with a private Catholic education free from harassment, intimidation, racial discrimination, and discriminating conduct.

77. As a result of Defendants' breach, Plaintiff was denied the benefits of the education she contracted to receive for her son and suffered damages in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
**(Third-Party Beneficiary Breach of Contract**
**Against Defendants Diocese and St. Joseph)**

78. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation made previously herein.

79. J.R. is a third-party beneficiary of the contract between Rodriguez and Defendants Diocese and St. Joseph.

80. Defendants Diocese and St. Joseph materially breached their contractual obligations to Plaintiffs by failing to provide J.R. with a private Catholic education free from harassment, intimidation, racial discrimination, and discriminating conduct.

81. As a result of this breach, J.R. was denied the benefits of the contract he was supposed to receive and suffered damages in an amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF
**(Breach of the Implied Covenant of Good Faith and Fair Dealing**
**Against Defendants Diocese and St. Joseph)**

82. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation made previously herein.

83. Defendants Diocese and St. Joseph breached the implied covenant by failing adequately to exercise discretion when determining how to respond to the harassment and racial discrimination directed towards J.R.

84. Defendants Diocese and St. Joseph's failure to implement and take preventative measures in response to known and severe harassment and racial discrimination was arbitrary and unreasonable and in bad faith.

85. As a result of Defendants Diocese and St. Joseph's breach, Plaintiff was denied the reasonably expected benefits of the education she had a right to receive for her son's education and suffered damages in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF
**(Third-Party Beneficiary Breach of the Implied Covenant of Good Faith and Fair Dealing Against Defendants Diocese and St. Joseph)**

86. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation made previously herein.

87. J.R. is a third-party beneficiary of the contract between Rodriguez and Defendants Diocese and St. Joseph.

88. Defendants Diocese and St. Joseph breached the implied covenant by failing adequately to exercise discretion when determining how to respond to the harassment and racial discrimination directed towards J.R.

89. Defendants Diocese and St. Joseph's failure to implement and take preventative measures in response to known and severe harassment and racial discrimination was arbitrary and unreasonable and in bad faith.

90. As a result of Defendants' breach, J.R. was denied the reasonably expected benefits of the education he had a right to receive as a third-party beneficiary of the contract between

Plaintiff Rodriguez and Defendants, and J.R. suffered damages in an amount to be determined at trial.

### NINTH CLAIM FOR RELIEF
### (Violation of the Consumer Fraud Act
### Against Defendants Diocese and St. Joseph)

91. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation made previously herein.

92. Under the Consumer Fraud Act, Defendants Diocese and St. Joseph are each a "person." The private educational services they promoted and sold to Plaintiffs Rodriguez and J.R. constitute "merchandise."

93. Defendants Diocese and St. Joseph's unconscionable commercial practices, deception, false pretenses, false promises and misrepresentations to Plaintiffs violated the Consumer Fraud Act, including by failing to abide by their obligations to: (1) provide J.R. with a safe and orderly learning environment; (2) provide J.R. with a learning environment that is free from harassment and racial discrimination and conduct; (3) follow and enforce St. Joseph's Plan; and (4) take appropriate and remedial responsive actions to protect J.R.

94. As a result of these unlawful acts, Plaintiffs suffered the ascertainable loss incurred when Plaintiff Rodriguez paid for J.R. to attend St. Joseph and Defendants did not satisfy their obligations to Plaintiff Rodriguez and for medical expenses Plaintiffs paid to address the damage caused by J.R. attending St. Joseph.

95. Plaintiffs' ascertainable losses also include attorney's fees associated with bringing a meritorious claim under the Consumer Fraud Act.

### REQUEST FOR RELIEF

Plaintiffs demand a trial by jury on all issues triable by a jury as a matter of right.

Plaintiffs respectfully request that this Court enter judgment in their favor, granting the following relief:

    a.    damages in an amount to be determined at trial, including compensatory, consequential damages and punitive damages;

    b.    attorney's fees and costs pursuant to Section 1988 and the Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.*; and,

    c.    such other and further relief as this Court deems just and equitable under the circumstances.

Dated: March 14, 2024
Little Falls, New Jersey

    */s/ Justyna Eisenbardt, Esq.*
Justyna Eisenbardt, Esq.
LAW OFFICES OF STEVEN A. VARANO, P.C.
96 Newark Pompton Turnpike
Little Falls, NJ 07424
Telephone: (973) 256-1414
Facsimile: (973) 256-6111
justynak@varanolaw.com
*Attorneys for Plaintiffs*